UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CRAIG AURICH,

    Petitioner,

v.                                    CASE NO. 5:10-cv-04-Oc-10PRL

WARDEN, FCC COLEMAN,

    Respondents.
_____/

## ORDER

Craig Aurich ("Petitioner") initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted (Doc. 5). Thereafter, Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 6). Petitioner filed a reply to the response (Doc. 10).

Petitioner raises three claims for relief in his petition. Petitioner alleges that: (1) his privilege against self- incrimination was violated when, prior to waiving his *Miranda*[1] rights, Petitioner invoked his right to counsel, but interrogation did not cease; (2) counsel was ineffective for failing to seek suppression of Petitioner's confession based on inadequate *Miranda* warnings; and (3) counsel was ineffective for failing to seek suppression of his confession as coercively obtained (Doc. 1 at 6-16).

For the reasons set forth below, the petition is denied.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966) (statements made in response to interrogation by a defendant in police custody admissible at trial only if prosecution can show that defendant was informed of certain rights prior to questioning).

I.  **Background and Procedural History**

On December 19, 2001, Petitioner was charged by information with two counts of sexual battery on a person less than twelve years of age (App. A).[2] Prior to trial, Petitioner filed a motion to suppress statements made to police after his arrest (App. B). After a hearing, the motion was denied (App. E). Petitioner filed a renewed motion to suppress which was denied without a hearing (App. F).

After a jury trial, Petitioner was found guilty as charged on both counts (App. H). Petitioner was sentenced to life in prison on each count, with the terms to run concurrently (App. I). Petitioner's convictions and sentences were *per curiam* affirmed by Florida's Fifth District Court of Appeal (App. M); *Aurich v. State*, 950 So. 2d 422 (Fla. 5th DCA 2007).

Petitioner filed a motion for post-conviction relief and a supplemental motion pursuant to Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 motion"), raising twelve claims of ineffective assistance of counsel(Apps. V, W). After an evidentiary hearing, the state court denied the motion, and the Fifth District Court of Appeal *per curiam* affirmed (Apps. Y, Z, EE); *Aurich v. State*, 22 So. 3d 88 (Fla. 5th DCA 2009).

Petitioner filed the instant petition seeking federal habeas corpus relief on December 31, 2009 (Doc. 1).

II. **Governing Legal Principles**

A.  *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

---

[2]Unless otherwise specified, references to the Appendices filed with the response (Doc. 7, filed March 12, 2010) shall be referred to as "App. _____ at _____."

2

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Patton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than

3

incorrect or erroneous." Rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward,* 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*); see e.g. Miller–El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### B.  Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) whether the deficient performance prejudiced the defense.  466 U.S. 668, 687-88 (1984).  Therefore, a habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayanz*, 556 U.S. 111, 113 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003))).  Because both parts of the *Strickland* test must be satisfied in order to demonstrate a violation of the Sixth Amendment, a district court

4

need not address the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner bears the burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden of demonstrating prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### *C. Exhaustion and Procedural Default*

Even if the grounds asserted warrant review by a federal court under § 2254, a petitioner must still give the State courts the opportunity to address the federal issues. The AEDPA requires that a state prisoner exhaust all available state court remedies, either on direct appeal or in a state post-conviction proceeding, thereby giving the state the opportunity to correct its alleged violations of federal rights. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion doctrine requires that the petitioner "fairly present" his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right. *Duncan v. Henry*, 513 U.S. 364, 365–366 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275 (1971)).

A district court is ordinarily required to dismiss a "mixed" petition, i.e., one containing both unexhausted and exhausted claims. *Pliler v. Ford*, 542 U.S. 225 (2004); *Rose v. Lundy*, 455 U.S. 509 (1982). However, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural rule, a district court can consider the petition but treat those claims as procedurally defaulted. *Pale v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, ...." *Smith* v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001). Finally, while a federal court may not grant a habeas petition which contains unexhausted claims, it may deny such a petition. *LeCroy v. Sec'y Dep't of Corr.*, 421 F.3d 1237, 1261 n.26 (11th Cir. 2005).

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally

defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. *House v. Bell*, 547 U.S. 518, 537 (2006). "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). Constitutionally ineffective assistance of counsel can constitute cause if that claim is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000). To show "prejudice," petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards*, 529 U.S. at 451; *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. *See also House*, 547 U.S. at 536–37 (prisoner asserting actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt).

### III.    Analysis

#### A.    Claim One

Petitioner claims that after his arrest and a partial conveyance of *Miranda* warnings, he invoked his right to counsel (Doc. 1 at 6). Petitioner asserts that, notwithstanding his request for counsel, the police continued with an interrogation, "and subsequently in the incommunicado police dominated atmosphere, Petitioner succumbed." (Doc. 1 at 6). Petitioner raised this argument on direct appeal, and the Fifth District Court of Appeal affirmed (App. K,

N).[3]

In *Miranda*, the United States Supreme Court held that when an individual is in custody and subject to questioning, procedural safeguards must be employed to protect the privilege against self-incrimination. 384 U.S. at 444-45. Thus, prior to questioning, the individual must be advised that: (1) he has the right to remain silent; (2) anything he says can be used against him in a court of law; (3) he has the right to the presence of an attorney; and (4) if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. *Id.* at 444.  While the individual may knowingly and intelligently waive these rights, unless such warnings and waiver thereof are demonstrated, no evidence obtained as a result of the interrogation may be used against the individual. *Id.*

After Petitioner's arrest, Petitioner was interviewed by Detective Bob Curran ("Curran") from the Marion County Sheriff's Office (App. G at 135).[4]  Curran questioned Petitioner as to whether he had recently used drugs or alcohol, and Petitioner assured him that he was not under the influence of such. *Id.* at 137. Curran advised Petitioner of his right to remain silent and of his right to have an attorney present during questioning. *Id.*  After Petitioner affirmed that he understood the rights, the following exchange occurred:

---

[3]Respondent argues that this claim is not subject to federal habeas review pursuant to *Stone v. Powell*, 428 U.S. 465 (1977) (Doc. 6 at 10-12).  In *Stone*, the United States Supreme Court held that federal habeas corpus relief is not available to redress violations of the Fourth Amendment exclusionary rule if the petitioner was afforded a "full and fair opportunity to litigate" the Fourth Amendment issue in the state courts. 428 U.S. at 494.  However, Petitioner raises this claim under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and the Eleventh Circuit has not extended *Stone* to confessions obtained in violation of *Miranda*. *See Jarrell v. Balkcom*, 735 F.2d 1242, 1252 (11th Cir.1984).  "While *Miranda* bears certain similarities to the exclusionary rule which may justify extension of *Stone* to [F]ifth [A]mendment *Miranda* claims, no such similarities exist between an involuntary confession and inadmissible evidence under the exclusionary rule." *Jarrell*, 735 F.2d at 1252.  Accordingly, Claim One is not barred by *Stone* and will be addressed on the merits.

[4]The interviewing detective's name is inconstantly spelled throughout the record as "Curran" and "Kern."  To avoid confusion, it will be spelled as "Curran" throughout this Order.

| | |
|---|---|
| CURRAN: | Having these rights in mind, do you wish to talk to me now? |
| PETITIONER: | About the lawyer, It is kind of a difficult thing. Would you recommend getting a lawyer? |
| CURRAN: | That's your call. |
| PETITIONER: | I have a public defender now that's on a previous case, would that be okay? It's the same kind of thing. |
| CURRAN: | Okay. What I'm asking is – The problem I have here now is this is a different case. It doesn't involve your previous attorney. If you want your attorney here before I talk with you then the interview stops right now. That's your call. |
| PETITIONER: | I guess let's go ahead. |
| CURRAN: | Go ahead and what? |
| PETITIONER: | Question me about it now. |
| CURRAN: | Huh? |
| PETITIONER: | Go ahead and question me without an attorney. |
| CURRAN: | Are you sure? |
| PETITIONER: | Yes, I'm sure. |

(App. G at 137-38). After the exchange, Curran asked Petitioner to sign a written waiver and explained that if Petitioner wanted his attorney before questioning, he would have to stop the interview(App. G at 138; App. D at 62). Twice more, Petitioner assured Curran that he wanted to continue with questioning, and he again denied that he was under the influence of alcohol (App. G at 138-39). During questioning, Petitioner confessed to performing oral sex on the victim on two separate occasions (App. G at 150, 152, 153).

Prior to trial, counsel filed a motion to suppress the confession, arguing, *inter alia*, that it was obtained in violation of Petitioner's right to counsel and his privilege against self-incrimination (App. B). An evidentiary hearing was held on the motion (App. C). At the

9

hearing, Petitioner testified that his query regarding his public defender on a different case, was a request to have an attorney present during questioning (App. C at 122). Petitioner claimed that the subsequent questions from Curran regarding Petitioner's desire for an attorney were attempts to evade his request (App. C at 122-23). The trial court denied Petitioner's motion. The court determined that Petitioner's question regarding his public defender on another case did not amount to an invocation of his rights (Appl E). This conclusion is supported by the record[5]

When a person undergoing a custodial interrogation states that he wishes to remain silent, "the questioning must end, and if he expresses a desire to consult with an attorney, the questioning must cease until one is provided for him." *United States v. Acosta*, 363 F.3d 1141, 1151 (11th Cir. 2004). When an accused invokes his right to have counsel present during a custodial interrogation, he may not be subjected to further interrogation until counsel has been made available or the accused himself initiates further communication, exchanges, or conversations with police. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). However, the Supreme Court has held that law enforcement officers have no duty to stop an interrogation where the suspect's invocation of either of those rights is equivocal. *Davis v. United States*, 512 U.S. 452, 461–62 (1994). In *Davis*, the Supreme Court held:

> Invocation of the Miranda right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning. Rather, the suspect must unambiguously request counsel.

---

[5] The Fifth District Court of Appeal affirmed without issuing a written opinion. Thus, there is a qualifying decision under the AEDPA. *Ferguson*, 527 at 1146.

512 U.S. at 459 (internal citations omitted). The inquiry as to whether a suspects' statement or request is equivocal is an objective one. *Id.* at 461. Faced with an ambiguous request for counsel, police may, but are not required to, ask clarifying questions. *Id*; *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259-60 (2010).

Here, the credible evidence of record shows that Petitioner merely queried Curran as to whether his public defender on a previous case would be "okay", but never unequivocally requested counsel's presence or declined to answer questions in his absence. This was not a clear invocation of counsel. *See United States v. Tran*, 171 Fed. Appx. 758, 761 (11th Cir. 2006) (*per curiam*) (finding that request from defendant to retrieve his bankruptcy lawyer's business card was too ambiguous to constitute an invocation of right to counsel); *see also Davis*, 512 U.S. at 459–62 (holding that "[m]aybe I should talk to a lawyer" was not an unambiguous invocation of the right to counsel); *United States v. Peters*, 435 F.3d 746, 751–52 (7th Cir. 2006) (observing that circuits have held that a statement such as "I might want to talk to an attorney" or "[d]o you think I need a lawyer?" or a request to call someone about possible representation is too ambiguous to constitute invocation of right to counsel). Neither were Curran's statements to Petitioner that "this is a different case" and that if Petitioner wanted his attorney "before I talk to you then the interview stops right now" anything more than clarifying statements. Several times after Petitioner indicated that he wished to proceed with questioning, Curran asked Petitioner whether he was sure of his decision (App. G at 138, 139-40). Each time, Petitioner answered affirmatively. *Id.*

Under these circumstances, the evidence does not establish that Petitioner made a clear and unambiguous invocation of counsel sufficient to require Curran to stop the interview. The Fifth District Court of Appeals' rejection of this claim was not contrary to clearly

11

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on Claim One.

### B. Claim Two

In claim two, Petitioner argues that counsel was ineffective for failing to move to suppress his confession as having been made pursuant to an inadequate *Miranda* warning (Doc. 1 at 11).  Specifically, Petitioner argues that  Curran failed to advise Petitioner of his right to "decide at any time to exercise these rights and not answer any questions or make any statements." *Id*. Petitioner argues that he wanted to cease the interrogation after it began, but, as a result of having previously waived his right to remain silent, Petitioner felt compelled to continue. *Id.* at 12.

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief, and the trial court denied the claim on three grounds: (1) because Petitioner withdrew the claim at the evidentiary hearing; (2) because counsel had filed a motion to suppress Petitioner's confession; and (3) because the issue had been the subject of the Defendant's direct appeal and "claims that were, or could have been, raised on direct appeal are procedurally barred from re-litigation in post-conviction proceedings." (App. Z). Respondents argue that this Court must dismiss this claim because it was ruled procedurally barred by the highest state court to consider the claim (Doc. 6 at 13). This Court agrees that Petitioner's claim is procedurally barred.

 In the instant case, the trial court reached the merits of the claim and determined that counsel had not been ineffective because he had filed a motion to suppress Petitioner's

confession. The court also determined that this claim was unexhausted and procedurally barred. Where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). However, the Supreme Court has recently determined that, to the extent that a procedural default was caused by post-conviction counsel's errors, it is not automatically barred from federal review because "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of ineffective assistance at trial." *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012).

Post-conviction counsel indicated during the Rule 3.850 evidentiary hearing that he was withdrawing "number five . . . because the motion to suppress was filed obviously." (App. Y at 303) However, subsequent to that statement, counsel argued:

> If the Court reads what the *Miranda* that was read to my client versus the form that was signed, the Court will find that Detective Curran did not read it properly because he left out the part where he can invoke the right to an attorney at any time and could stop the interview. My client was unaware of that. That is something that should have been argued at the motion to suppress and may have had some impact if that had been granted or not, which would control – if it was granted, the jury wouldn't have seen it which would have made a difference in the verdict."

*Id.* at 307. In response, the State countered that Petitioner had signed a waiver of rights that included the complete warning, leaving no deficiency in Petitioner's *Miranda* warnings. *Id.* at 310.

Post-conviction counsel's argument of this issue to the state court after verbally withdrawing "number five" is evidence that counsel did not intend to forfeit this particular claim. Accordingly, this is the type of error contemplated by *Martinez* that can establish cause for a petitioner's procedural default. However, to overcome the procedural default, even one

caused by post-conviction counsel's mistake, Petitioner must still demonstrate that his underlying ineffective assistance of trial counsel claim is a substantial one, "which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318. Petitioner has not overcome this hurdle.

In *Florida v. Powell*, 130 S. Ct. 1195 (2010), the United States Supreme Court addressed the issue of whether the standard Florida warnings "reasonably convey to a suspect his rights as required by *Miranda*." *Id.* at 1204 (quoting *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989)). As in the instant case, the issue in *Powell* was whether Powell had been adequately advised of his right to counsel "during" interrogation. Powell was advised prior to questioning that he could consult a lawyer before answering questions and that he could exercise his rights at any time during the interview. *Id.* at 1204-05. However, Powell argued that these warnings were inadequate to convey his right to the presence of an attorney *during* questioning. *Id.* at 1197. The Supreme Court disagreed, recognizing that a combination of warnings could reasonably convey a suspects' *Miranda* rights, and noting that "[i]n combination, the two warnings reasonably conveyed Powell's right to have an attorney present, not only at the outset of interrogation, but at all times." *Id.* at 1205.

Likewise, Petitioner was orally advised by Curran that he "ha[d] the right to talk to a lawyer and have one present with you while you are being questioned." Subsequently, Petitioner signed a waiver which stated that he could "decide at any time to exercise these rights and not answer any questions or make any statements." (App. V at 177). The combination of these warnings reasonably conveyed the essential message that Petitioner was entitled to counsel during interrogation and that he could stop the interrogation at any time. *See Powell*, 130 S. Ct. at 1204. Because Petitioner's warnings satisfied *Miranda*,

14

counsel had no grounds on which to argue that the warnings were inadequate. Accordingly, Petitioner has not demonstrated that this claim has "some merit", and he has not overcome the procedural default of this claim.[6] Claim Two is procedurally barred from review.

### C. Claim Three

Petitioner alleges that counsel was ineffective for failing to file a motion to suppress his confession on the basis that the police promised to help him if he confessed to the charges (Doc. 1 at 16). Specifically, Petitioner takes issue with a statements made by Detective Curran suggesting that Petitioner should "be a man" and admit his crimes because doing so would show concern for the victim and increase the odds of Petitioner "getting help" for his problem (App. C at 90, 93). Petitioner argues that he believed the offers of help to be "an initiation of a bargain" and that Curran's reliance upon Petitioner's love for the victim, combined with the offers of help "overbore the will of Petitioner, and so Petitioner admitted to what he knew detective Curran wanted to hear, in order to fulfill his side of the agreement." (Doc. 1 at 16-17).

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief, and an evidentiary hearing was held on the claim (App. Y). The trial court denied relief in a written order, noting that Petitioner had not mentioned the alleged promises at either the motion to suppress, nor at trial (App. Z at 323). The trial court also determined that counsel had made a reasonable strategic decision to forego pursuing a false confession defense because a mental health expert hired to evaluate the effectiveness of a false confession defense had concluded that it would have not been successful (App. Z at 324). Finally, the trial court

---

[6] Petitioner cannot return to the state court to raise the unexhausted portions this claim because any Rule 3.850 motion would be untimely or successive. Fla. R. Crim. P. 3.850(b) and (f). Neither has Petitioner shown the applicability of the actual innocence exception to procedural default.

determined that Petitioner could not demonstrate prejudice because his video-taped confession had been published to the jury, and the jury had been instructed that it should determined whether or not Petitioner's statement was freely and voluntarily made and whether Petitioner had been promised anything in exchange for his statement (App. Z at 324). Because Petitioner had demonstrated neither counsel's deficient performance nor resulting prejudice, the trial court denied the claim. The record supports the State court's denial.

In Florida, police may not obtain a confession through direct or implied promises. *Johnson v. State*, 696 So. 2d 326 (Fla. 1997). However, police misrepresentations alone do not necessarily render a confession involuntary. *Blake v. State*, 972 So. 2d 839, 844 (Fla. 2007). Before finding a confession inadmissible, Florida courts have required that the alleged promise "induce, be in return for, or be a *quid pro quo* for the confession." *Id.* "The constitution does not bar the use ... of any statements that could be construed as a threat or promise, but only those which constitute outrageous behavior and which in fact induce a confession." *Garcia v. State*, 60 So. 3d 1097, 1099 (Fla. 4th DCA 2011) (quoting *Nelson v. State*, 688 So. 2d 971, 974 (Fla. 4th DCA 1997)). It is unnecessary to reach the question of whether Curran's statements to Petitioner were "outrageous" because the statements did not constitute or suggest a promise of leniency in exchange for Petitioner's confession.

During the interview, Petitioner initially denied sexual contact with the victim and claimed that he did not know why the victim would indicate that Petitioner had touched his penis (App. C at 89-90). The following exchange took place between Petitioner and Curran:

> CURRAN:  I bet you knew. But, you know, it's obvious you know, there's something wrong here and we need to get you some help. And the biggest thing is, you know, being a man and, you know, you got some problems. We can get you some help.
>
> And when a six year old draws me a picture, draws me a picture

16

>
> like that, his writing up there in the top left, right. Here actually all of this is his writing. This right here. Okay, and he tells me, Allen did this. And then his penis and then it says that work "suck" where it says SUV. Okay. And I don't know where a six year old can come off doing that. Okay. Unless it happened. He describe[d] to me what he was wearing. Okay.
>
> So, I mean why are you doing this?
>
> PETITIONER: I don't know.
>
> CURRAN: Huh?
>
> PETITIONER: I don't know. I mean what are my options here? I mean, I could–
>
> CURRAN: Why don't you explain to me what happened?

(App. C at 90-91). Petitioner continued to deny improper contact with the victim while Curran continued to question Petitioner.

> CURRAN: Craig, let's get this off your chest, and let's try to work through it. Okay. Why would he say this?
>
> PETITIONER: I don't know but –
>
> CURRAN: When was the last –
>
> PETITIONER: I want to know what's the best thing for me to do because if I admit it that I did anything, I'm just going to go to prison anyway. But I don't know if this happened. If I take it to trial, I probably have a chance of getting off. I don't know. I know what you want to hear. I know what you want me to say. But I don't want to say anything like that. It goes against what I believe in. If there is any chance of, you know, of getting this over with now, I probably would.
>
> CURRAN: Well, let me tell you something. Being a man and admitting to it, okay, it shows a little bit of concern for Dallen. It shows remorse. Okay. And this is how, you show the Judge, you show Dallen's parents that you have a problem and you want to get some help. And they are more apt to give you some help if you are willing to admit that you have got a problem.
>
> PETITIONER: What kind of help is there for that?

17

| | |
|---|---|
| CURRAN: | Well, there's all kinds of counseling and stuff and treatment. |
| PETITIONER: | But does any of it work? |
| CURRAN: | It only works if you want to help yourself. |

. . .

| | |
|---|---|
| CURRAN: | Okay.  So if you want to tell Dallen's mom anything or want me to tell her something, let's hear it.  You want to say you are sorry to Dallen.  Obviously, the kid misses you and loves you to death.  When he sits there and tells me when is the punishment going to be over?  When can I see Dallen Allen again?  The kid thinks the world of you. |
| PETITIONER: | Yes, I did it.  I molested Dallen sexually.  I have had a problem for years since I was little. |

(App. C at 92-94)

At the evidentiary hearing on Petitioner's 3.850 motion, defense counsel testified that after viewing the video of Curran's interview with Petitioner, it appeared that Petitioner "understood his rights, agreed to waive those, and gave an extensive statement to Detective Curran which was uncoerced I believe." (App. Y at 284).  However, at Petitioner's family's urging, counsel had Petitioner evaluated by Psychologist Dr. Gregory DeClue ("Dr. Declue") to evaluate the possibility of a false confession. *Id.* at 281-82.  Dr. Declue interviewed Petitioner and reviewed the police reports as well as the video of the interview between Curran and Petitioner  (App. Y at 282).  Dr. DeClue noted that Petitioner did not appear impaired during the interview and that "[a]lthough there were numerous potentially coercive techniques used during the course of the interrogation, they all appear to be of a type commonly used in interrogations and accepted by judges when their use has been challenged." (App. Y at 338). Dr. DeClue concluded:

> Although Mr. Aurich claims that he fabricated the details of having committed sexual offenses against other children, having a longstanding sexual problem,

18

and having received treatment before, his description is, on the face of it, credible, and I found no indication that those statements were made due to suggestions or pressure asserted by Detective Curran.

(App. Y at 339).

Petitioner argues that Curran's references to "help" were implied promises of leniency, "or treatment instead of punishment." (Doc. 10 at 11). However, when Curran was asked by Petitioner about the type of help available for his "problem", Curran indicated that there was counseling for the problem, but did not tell Petitioner that counseling would be in lieu of punishment. Given that Curran's statements to Petitioner did not constitute an implied promise of leniency in return for a confession, a motion to suppress is unlikely to have been successful. Moreover, given Dr. DeClue's report, counsel was not ineffective for failing to challenge Petitioner's confession as having been obtained through unlawful coercion. Petitioner has failed to establish that counsel's performance was deficient. *See Chandler v. Moore*, 240 F.3d 907 (11th Cir. 2007) (counsel not ineffective for failing to raise a non-meritorious issue). Accordingly, the Court finds that Petitioner has failed to establish that the state court's rejection of this claim was either contrary to, or an unreasonable application of federal law. Claim Three is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

**IV.** **Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) filed by Craig Aurich is **DISMISSED WITH PREJUDICE**. Claims One and Three are denied on the merits. Claim Two is dismissed as procedurally barred. The Clerk of Court shall enter judgment accordingly.

19

2. The Clerk of Court is directed to terminate all other pending motions and close this case.

**DONE AND ORDERED** at Ocala, Florida, this 5th day of November, 2012.

_____
UNITED STATES DISTRICT JUDGE

OrlP-4 11/5
Copies to:
Craig Aurich
Counsel of Record